UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL NO. 12-cr-11-DLB-CJS
CIVIL ACTION NO. 13-cv-7302-DLB-CJS

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                          REPORT AND RECOMMENDATION

JAMIEL BEARD                                                                 DEFENDANT

\* \* \* \* \* \* \* \* \* \*

On August 19, 2013, Jamiel Beard, *pro se*, filed a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255, asserting two claims of ineffective assistance of counsel. (R. 53). On December 10, 2013, upon motion of the United States, an evidentiary hearing was held wherein Beard was represented by Attorney David Sloan.[1] (R. 59, 63). At the conclusion of the evidentiary hearing, the Court entered a briefing schedule. (R. 67). On January 7, 2014, the United States filed a Response to Beard's § 2255 Motion. (R. 71). On February 20, 2014, Beard, through counsel, filed a Reply (R. 80). Having all relevant documents before the Court and having completed the evidentiary hearing, the matter is now ripe for consideration and preparation of a Report and Recommendation. 28 U.S.C. § 636(b). For the reasons stated below, it will be herein **recommended** that Beard's Motion be **denied**.

---

[1] The Court appointed Attorney David Sloan to represent Beard at the evidentiary hearing pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

I.   **FACTUAL AND PROCEDURAL HISTORY**

On October 7, 2011, officers with the Kentucky Division of Probation and Parole conducted a home visit at Beard's residence and located a firearm in his possession. (R. 46, at ¶ 3). On the date of the home visit, Beard was on federal supervised release in case 2:01-cr-59 (E.D. Ky.).

On March 8, 2012, a federal grand jury returned an Indictment in the case at bar, charging Beard with one count of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). (R. 1). On April 2, 2012, Beard appeared before the presiding District Judge for an initial appearance and arraignment on the Indictment, and also for an initial appearance on a charge that he violated the conditions of his supervised release in case 2:01-cr-59. (R. 6, *See also United States v. Beard*, 2:01-cr-59, Docket Entry 69 (E.D. Ky. Apr. 2, 2012). On April 24, 2012, the Government filed a Notice Regarding Enhanced Statutory Punishment, setting forth Beard's three prior felony convictions that the Government argued subjected Beard to the enhanced statutory punishment under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). (R. 14).

On October 2, 2012, Beard entered into a binding Plea Agreement with the United States pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), whereby he agreed to plead guilty to being a felon in possession of a firearm in exchange for an agreement that any sentence imposed for his supervised release violation in case 2:01-cr-59 would run concurrent with the agreed-upon 180-month term of imprisonment on the felon in possession charge. (R. 46, R. 75, at 2-3). In addition, Beard agreed to waive his right to appeal, but he did not waive his right to collaterally attack the guilty plea, conviction, and/or sentence. (R. 46, at ¶ 7).

At the rearraignment hearing on October 16, 2012, the District Court engaged Beard in a line of questioning to insure Beard understood the terms of the Agreement. (R. 75). The Court

specifically discussed the significance of a Rule 11(c)(1)(C) plea agreement, explaining to Beard that if the Court accepted the Agreement, it was required to sentence him to 180 months of incarceration with the supervised release sentence to run concurrent. (*Id*. at 13, 15). Beard acknowledged multiple times that he understood the binding nature of the Agreement. (*Id*.).

The District Court also reviewed with Beard the waiver provision contained in the Agreement, which waived his right to appeal. The Court specifically asked Beard if he understood that he was waiving "all [his] appellate rights." Beard acknowledged his understanding of the waiver provision. (R. 75, at 18-19). The Court concluded that Beard's waiver of his appellate rights was knowing and voluntary. (*Id*. at 19-20).

Further, the Court discussed with Beard's retained counsel W. Robert Lotz and the Assistant United States Attorney ("AUSA") whether the prior convictions qualified Beard for the armed career criminal enhancement, which by statute subjected Beard to the statutory minimum sentence of 180 months. (*Id.* at 21). The AUSA explained the three prior felonies that were the basis for the enhancement. Attorney Lotz acknowledged that he had researched the law and had performed his due diligence to make sure that the sentence being proposed in the binding Agreement was, in fact, a proper sentence.[2] (*Id*.).

---

[2]During a September 14, 2012, status conference, Lotz indicated to the presiding District Judge that he intended to file a motion *in limine* with respect to the use of Beard's Fayette Circuit Court conviction as a predicate offense under the ACCA. (R. 37). On September 17, 2012, Lotz filed a Notice that such a motion would not be forthcoming, as research had revealed Supreme Court authority that Beard's prior state court conviction could be used for determining whether he qualified under the ACCA. (R. 38). As subsequently discussed in section II.B. of this Report and Recommendation, Beard argues in his § 2255 Motion that Lotz failed to object to the application of the ACCA even though two of his federal convictions should have counted as one criminal episode. At the evidentiary hearing on Beard's § 2255 Motion, Attorney Lotz testified that in the course of defending Beard, he had also researched whether the ACCA applied and concluded that the prior federal offenses constituted two separate convictions under the ACCA. (R. 78, at 67-73).

3

After this colloquy, the Court concluded that Beard was fully competent and capable of entering an informed plea, and he understood the nature of the charges and the consequences of entering the plea. (R. 75, at 24). Thus, the District Court found Beard's plea of guilty was knowing and voluntary and approved and accepted the Plea Agreement. (*Id*. at 24; *see also* R. 44, 46).

On January 25, 2013, the District Court sentenced Beard consistent with the binding Plea Agreement. Beard was sentenced to 180 months of imprisonment on the felon in possession of a firearm charge and to 54 months on the supervised release violation in 2:01-cr-59, to run concurrent with the 180-month term imposed in the current action. (*Id*.; *see also* R. 76, at 13). Beard did not file an appeal.

On August 19, 2013, Beard filed the pending § 2255 Motion presenting two claims of ineffective assistance of counsel: 1) counsel failed to file a notice of appeal despite his request that one be filed; and 2) counsel failed to object to the application of the ACCA. (R. 53). On December 10, 2013, the Court held an evidentiary hearing on these issues, wherein Beard and Lotz testified. (R. 67, 78). Upon counsel's representation that neither party intended to present further evidence or testimony, the Court closed the evidentiary hearing at the conclusion of the hearing and set a briefing schedule. (R. 78, at 98-99). In accordance with that schedule, the United States filed its Response to Beard's § 2255 Motion (R. 71), to which Beard filed a Reply (R. 80).

## II. ANALYSIS

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, the court was without jurisdiction to impose the sentence, or the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a). Here, Defendant alleges

4

his counsel's performance violated his Sixth Amendment right to counsel by: 1) failing to file a notice of appeal despite his request that one be filed; and 2) failing to object to the application of the ACCA. (R. 53).

The Supreme Court has held that '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To meet this standard, the Court set forth a two-part test. First, a defendant is required to show that counsel's representation fell "below an objective standard of reasonableness." *Id*. at 687-88. In reviewing this prong, the court is to apply a deferential standard, i.e. there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. If a defendant satisfies the first prong, he must also establish that counsel's deficient performance prejudiced him. *Id*. at 691-94. Specifically, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Defendant must establish both prongs by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

### A.     Failure to File a Notice of Appeal

Beard claims that he received ineffective assistance of counsel because his counsel failed to file an appeal on his behalf after he "specifically requested" counsel do so. (R. 53-1, at 4). Failure to file an appeal upon a defendant's express request is *per se* ineffective assistance of counsel. *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000)*; Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (citing *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)). The Sixth Circuit has held "even when a defendant waives all or most of his rights to appeal, an attorney who fails to

file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal." *Campbell*, 686 F.3d at 360. Therefore, if this Court were to determine that Defendant explicitly directed Attorney Lotz to file a notice of appeal and Lotz failed to do so, Beard would be entitled to file a delayed appeal. *Id.*

Here, conflicting testimony was heard at the evidentiary hearing on whether Beard specifically instructed Attorney Lotz to file a notice of appeal on his behalf. On this issue, Beard testified on direct examination as follows:

> Q. But did you explicitly request or direct Mr. Bob Lotz as your attorney to file an appeal of this judgment in a criminal case after you were sentenced?
>
> A. Yes, sir.
>
> Q. Has that been done?
>
> A. No, sir.
>
> Q. And when did you do that?
>
> A. After final sentencing.
>
> Q. Was that in the courtroom or in the jail or --
>
> A. In the courtroom, in the -- in the courtroom before I was ushered out of the court.
>
> . . .
>
> Q. And what did he say in response to that?
>
> A. He said that he would take care of it, that he would talk to me later.
>
> Q. Did you ever write him a letter requesting the appeal?
>
> A. No.
>
> Q. Did he ever write you a letter telling you explicitly he was not wanting to appeal for you?

> A. No.
>
> Q. Have you had any correspondence from him or to him regarding an appeal whatsoever?
>
> A. No.
>
> Q. Were you ever provided either verbally or in writing from Mr. Lotz what your appeal rights were?
>
> A. No.
>
> Q. As far as time deadlines or what filings would be required or anything like that?
>
> A. No, not at all.
>
> Q. Was there anything like that after you asked him to appeal?
>
> A. No.
>
> Q. Did you think he was appealing the case?
>
> A. I was under the–yes, I was under the assumption that it would be appealed.

(R. 78, at 22-3).

On cross-examination, Beard acknowledged that his attorney reviewed all of the terms and conditions of the Plea Agreement with him, and Beard knew that it contained a provision that said he was waiving his right to appeal. (*Id*. at 35). Beard also recalled the presiding District Judge reviewing the waiver provision with him, and that he was told the Plea Agreement precluded him from filing an appeal. (*Id*. at 52). Beard testified that despite the Agreement's express provision that he did not have a right to appeal and the Court's specific discussion of the effect of the waiver provision, he thought he could still appeal the application of the ACCA enhancement because his counsel told him he could. (*Id*.).

To the contrary, Attorney Lotz testified that he explained to Beard the waiver provision in the Plea Agreement, and specifically explained that the Agreement did not preserve any right for direct appeal. (R. 78, at 79-81, 87, 95). Lotz also testified that he never told Beard that despite this waiver he could still appeal certain issues. In fact, Lotz testified that he had attempted to negotiate a conditional plea agreement on Beard's behalf that would have expressly reserved Beard's right to appeal certain issues, but that the AUSA rejected his request. (*Id*. at 94-95). Lotz testified that he provided Beard with a copy of the AUSA's letter rejecting his proposal for a conditional plea, and explained that the Agreement being presented by the Government, which Agreement Beard subsequently signed, did not reserve any rights for direct appeal. (*Id*. at 88-90; 94-95).

Lotz also testified that Beard never asked him to file a notice of appeal. (*Id*. at 77-80). Specifically, Lotz testified:

> Q. At the point when you were reviewing [the] PSR at the jail, did he say that he still wanted to fight the ACC[A] enhancement?
>
> A. No, he did not.
>
> Q. Did he ever say that he wanted to object or contest or fight the ACC[A] enhancement prior to the time of final sentencing?
>
> A. No, he did not.
>
> Q. Did he indicate that he wanted to contest the ACC[A] enhancement at any time during final sentencing?
>
> A. No.
> . . .
> Q. Do you specifically recall whether at any point in time during the course of your representation of Mr. Beard that he specifically instructed you to file a notice of appeal on his behalf?
>
> A. No.

8

(*Id*. at 77-79; *see also id*. at 80-81 (wherein Lotz further testified that Beard did not instruct him to file an appeal)).

Lotz also testified that on the same day as the sentencing hearing, he sent Beard a letter enclosing a receipt for the special assessment Lotz paid after the sentencing on Beard's behalf. (R. 84, *see also* R. 68, Def. exhibit 1). Notably, in that letter, Lotz wrote: "This concludes all the matters you retained me to represent you on and I will be closing your file and taking no further action unless I hear from you in the future." (*Id*.). Lotz further testified that if Beard had asked him to appeal he probably would have filed the notice of appeal despite knowing it would have no merit. (R. 78, at 90). Lotz reiterated, however, that Beard did not at any time request that he file a notice of appeal. (*Id*.).

Having reviewed the Record and considered the evidence presented at hearing, the Court concludes that Beard did not instruct Attorney Lotz to file a Notice of Appeal on his behalf. Beard's claim that he believed he had retained the right to appeal the ACCA enhancement is not credible, as it is unsupported by the record. The record demonstrates the presiding District Judge specifically discussed the waiver provision with Beard, and Beard acknowledged that he understood he was waiving all appellate rights. (R. 75, at 18-20).

More importantly, Beard's testimony that he explicitly directed Lotz to file an appeal (*see* R. 78, at 22) is not credible. If, as Beard contends, he had instructed counsel to file an appeal while he was still in the courtroom after the January 25, 2013, sentencing hearing (*see* R. 78, at 22), it would seem reasonable for Beard to have taken action, either directly or indirectly, upon receipt of Lotz's January 25, 2013, letter informing Beard that his representation had concluded and that he would not be taking any further action in his case unless Beard further contacted him. To the

9

contrary, Beard testified that he never wrote Lotz a letter requesting he file an appeal. (*Id.*). Nor did Beard testify that he or someone on his behalf called Lotz upon his receipt of Lotz's letter to question why Lotz was not filing the appeal that Beard allegedly directed him to file. Further, Beard did not testify that he took any action on his own to appeal after learning that Lotz was taking no further action.

The Court does find credible Attorney Lotz's testimony that Beard did not instruct him to file a notice of appeal. *See United States v. Davidson*, No. 6:06-407, 2008 WL 170507, at *14 (E.D. Ky. Jan. 17, 2008) (finding counsel's testimony credible where counsel provided a detailed account of the events and described regular practices he followed with respect to a defendant's appeal rights). Absent specific instruction to do so, Lotz was not under any obligation to file a notice of appeal on Beard's behalf, and his failure to do so did not amount to constitutionally deficient representation. *See United States v. Vice*, No. 5:11-cv-152-DCR, 2014 WL 1168619, at *7 (E.D. Ky. Mar. 21, 2014) (ineffective assistance of counsel claim lacked merit where no credible evidence presented of defendant's express request that counsel file an appeal).

Having found that Beard cannot meet the first prong of *Strickland*, the court need not conduct an analysis under the prejudice prong. *Strickland*, 466 U.S. at 697. Accordingly, Beard's ineffective assistance of counsel claim on this point lacks merit, and it will be herein recommended that this claim be denied.

### B.  Failure to Object to the Applicability of the ACCA

Beard also claims that his trial counsel provided ineffective assistance for failing to object to the applicability of the ACCA. (R. 53, at 4). Beard contends that two of the convictions used to qualify him for sentencing under the ACCA should have counted as one criminal episode and thus

he did not have three qualifying convictions as required to invoke the enhanced penalty. (R. 53-1, at 4-7). Beard argues that but for counsel's failure to object to the applicability of the ACCA, he would not have been sentenced to a term of fifteen years.

As discussed above, to prevail on a claim of ineffective assistance of counsel, Beard must establish two elements: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-88. Beard cannot establish either factor because he was properly sentenced under the ACCA.

First, Beard cannot establish that counsel was constitutionally deficient in failing to object to the ACCA sentencing enhancement, because he qualified for its application. The ACCA provides a mandatory minimum sentence of fifteen (15) years for a person convicted of violating 18 U.S.C. § 922(g) who has three prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Beard argues he only has two qualifying convictions, not three.

Beard does not argue that there is any error in the recitation of the facts of his prior convictions as set forth in either his Presentence Investigation Report (PSR) or the Notice by the United States Regarding Enhanced Statutory Punishment. (R. 14). Those documents reveal that:

> 1. On or about December 19, 2001, [Beard] was convicted in this Court, case number 1-59-HRW, of Distribution of Crack Cocaine, an offense which occurred on January 30, 2001, and sentenced to 120 months imprisonment;
>
> 2. On or about December 19, 2001, [Beard] was convicted in this Court, case number 1-59-HRW, of Aiding and Abetting the Distribution of Cocaine, an offense which occurred on April 27, 2001, and sentenced to 120 months imprisonment; and
>
> 3. On or about April 24, 1998, [Beard] was convicted in Fayette Circuit Court, case number 96-CR-173, of Trafficking in a Controlled Substance (Crack Cocaine), a Class C felony, and sentenced to 5 years in prison.

(R. 53).

Beard instead contends that the two convictions on December 19, 2001, should have counted as only one conviction for ACCA purposes. (R. 53-1, at 6). The basis of Beard's argument appears to be that the December 19, 2001, convictions only count as one because there was no intervening arrest, he was charged for both crimes in the same indictment, and his conviction for each crime was entered in the same case, 2:01-cr-59 (E.D. Ky), on the same day, and for which he ultimately received a concurrent sentence. (*Id*.).

It appears that Beard has confused the manner in which a defendant's criminal history is calculated under the United States Sentencing Guidelines ("U.S.S.G.") § 4A1.2(a)(2) with the question of whether a defendant is an armed career criminal under 18 U.S.C. § 924(e). U.S.S.G. § 4A1.2(a)(2) reads, in relevant part:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest ( i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2).

The Sixth Circuit, however, has rejected the argument that the Sentencing Guidelines for computing a defendant's criminal history category should be used to determine whether a defendant's prior criminal convictions qualify him under the ACCA. *See United States v. Bailey*, 264 F. App'x 480, 483-84 (6th Cir. 2008); *United States v. Taylor*, 301 F. App'x 508, 521 (6th Cir. 2008). Instead, in determining if a defendant has "three previous convictions" for purposes of the ACCA, the relevant factor is not the date of conviction of the predicate offenses, but the date the

defendant committed the offenses for which he was convicted. *Id*. at 521 (citing *United States v. Roach*, 958 F.2d 679, 684 (6th Cir. 1992)). "The fact that the offenses were consolidated for sentencing or for concurrent sentences is immaterial for ACCA enhancement purposes, so long as the separate offenses occurred at different times and/or places." *Taylor*, 301 F. App'x at 521 (offenses are distinct criminal episodes if they occurred on different dates regardless if adjudicated together); *see also United States v. Player*, 201 F. App'x 331, 336 n.1 (6th Cir. 2006) ("[a]s long as the offenses were committed on separate occasions, it does not matter, for purposes of determining a defendant's eligibility under § 924(e)(1), whether they were adjudicated together or combined for sentencing.").

While not determinative, the Sixth Circuit has compiled three factors to assist courts in determining whether offenses were committed "on occasions different from one another" within the meaning of the ACCA. *See United States v. Mann*, 552 F. App'x 464, 467 (6th Cir. 2014) (recognizing the Court's precedent setting forth factors to be considered in determining whether offenses were committed on different occasions but holding said factors are not determinative as each case requires analysis under the totality of the circumstances). The Sixth Circuit recently outlined these three factors:

> First, offenses are separate "if it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins." [*United States v. Hill*, 440 F.3d 292, 297 (6th Cir. 2006)]. "Second, two offenses are committed for ACCA purposes if it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense." *Id*. "Finally, separate offenses are committed if the offenses are committed in different residences or business locations." *Id*. at 298. "Offenses are separate if they meet any of these three tests." *United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012) (citing *United States v. Paige*, 634 F.3d 871, 873 (6th Cir. 2011)).

*U.S. v. Banner*, 518 F. App'x 404, 406 (6th Cir. 2013). In *Banner*, the court held that three drug offenses committed across a fifteen-day span constituted separate criminal episodes under the ACCA because each offense occurred on a separate day. Thus, there was a distinct separation between the beginning and ending of each offense.

Similarly here, the predicate offenses at issue in the December 19, 2001, conviction were committed on different days: January 30, 2001, and April 27, 2001. (R. 14; *see also* December 21, 2012, Presentence Investigation Report in case at bar). Accordingly, as Beard had three prior drug offenses that were committed on different occasions: April 24, 1998, January 30, 2001, and April 27, 2001, he qualified for the enhanced statutory sentence under the ACCA. Because Beard was correctly classified under the ACCA, it would have been futile for counsel to have argued otherwise, and his failure to do so does not constitute the ineffective assistance of counsel. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel).

Accordingly, because Beard was correctly classified under the ACCA, his attorney was not ineffective for failing to object. *See Vititoe v. United States*, Nos. 3:08-cr-94, 3:10-cv-379, 2013 WL 4757424, at *4 (E.D. Tenn. Sept. 4, 2013) (court denied ineffective assistance of counsel claim based on counsel's failure to argue predicate offenses constituted one episode under ACCA because no intervening arrest and crimes were charged in one indictment). Nor was Beard prejudiced by such failure as there is no showing that but for counsel's failure to object, "the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. Accordingly, Beard's ineffective assistance of counsel claim on this issue fails, and it will be herein recommended that it be denied.

### III. CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant on his § 2255 claims. A certificate may issue only if he has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's § 2255 claims or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a certificate of appealability on Beard's § 2255 claims be denied upon the District Judge's entry of his final order in this matter.

## IV. CONCLUSION AND RECOMMENDATIONS

For the reasons stated herein, **IT IS RECOMMENDED** that:

1. Defendant's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to § 2255 (R. 53) be **denied;**

2. a certificate of appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter;

(3) Judgment in favor of the United States be entered contemporaneously with the District Court's entry of its final order; and,

(4) this action be **stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 7th day of August, 2014.



Signed By:
*Candace J. Smith*
**United States Magistrate Judge**